# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SHERYL S. STANWORTH, | ) | |
| | ) | Case No. 10-76016-FJS |
| *Debtor.* | ) | |
| | ) | |
| SHERYL S. STANWORTH, | ) | |
| | ) | APN 14-07069-FJS |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| BANK OF NEW YORK MELLON, F/K/A | ) | |
| THE BANK OF NEW YORK, | ) | |
| AS TRUSTEE FOR THE CERTIFICATE- | ) | |
| HOLDERS OF CWALT, INC., | ) | |
| ALTERNATIVE LOAN TRUST 2007-OH2, | ) | |
| MORTGAGE PASS-THROUGH | ) | |
| CERTIFICATES, SERIES 2007-OH2, | ) | |
| LANDAMERICA FINANCIAL GROUP, INC., | ) | |
| MICHAEL P. COTTER, CHAPTER 13 TRUSTEE, | ) | |
| | ) | Chapter 13 |
| *Defendants.* | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the Amended Complaint to Determine Validity,

Priority or Extent of Lien filed by counsel on behalf of the above-captioned Plaintiff on

September 11, 2014 (the "Amended Complaint").  Bank of New York Mellon, f/k/a The Bank of

New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-

OH2, Mortgage Pass-Through Certificates Series 2007-OH2 ("Bank of New York Mellon") and

Bank of America, N.A. ("Bank of America" and, collectively with Bank of New York Mellon,

the "Defendants") filed a joint answer to the Amended Complaint on October 6, 2014 (the

"Answer").[1]    The remaining defendants are nominal parties who have not answered the Amended Complaint or filed any other pleadings in this adversary proceeding.

The Amended Complaint is styled as a complaint to determine extent, validity, and priority of lien pursuant to Federal Rule of Bankruptcy Procedure 7001(2).[2]    The Plaintiff requests the following relief in connection with her real property located at 3437 S. Crestline Drive, Virginia Beach, Virginia 23464 (the "Property"):

> (A) determin[e] the true holder of the Note; (B) modify[] the order approving the [loan modification], as necessary, to ensure that the true holder of the [n]ote is included in [the loan modification's] definition of "Lender," and confirming [Bank of America's] authority to enter into the [loan modification] on behalf of the true holder of the [n]ote; and (C) grant[] such other and further declaratory and equitable relief as this honorable Court may deem meet.

Amended Complaint at 8-9.[3]    However, for clarity in the record, the Court reduces the relief requested to two counts.[4]    First, a request to modify the Court's order approving a loan modification entered on October 8, 2011, in the Plaintiff's main bankruptcy case (the "Loan Modification Order") to reflect the holder of the note secured by the Property in the Loan Modification Order's definition of the lender (hereinafter "Count I").[5]    *See id.*; *see also* Loan

---

[1] A duplicate copy of the Answer was also filed on October 6, 2014.

[2] The Amended Complaint also references Federal Rule of Bankruptcy Procedure 3012, which provides for the valuation of a claim secured by a lien on property pursuant to 11 U.S.C. § 506(a).  *See* Amended Complaint at 1.  This is inapposite here as the Plaintiff seeks to challenge the basis of a lien itself.

[3] As the Amended Complaint contains both numbered and unnumbered, narrative paragraphs, all citation will be to the page where the relevant information can be found.

[4] The request for an order "granting such other and further declaratory and equitable relief as this honorable Court may deem meet" is a vague, boilerplate request that does not amount to a separate claim for relief.

[5] The Loan Modification Order approves a modification of the loan secured by the Property.  *See* Loan Modification Order at 1-3.  Bank of America is identified in the Loan Modification Order as the "Lender."  *See id.* at 1.

Modification Order, ECF 48.[6]  Second, a request for judicial determination of the holder of the

note (the "Note") and beneficiary of the deed of trust on the Property (the "Deed of Trust")

(hereinafter "Count II").  *See* Amended Complaint at 8.  The Plaintiff brings her second claim as

a challenge to the validity of Bank of New York Mellon's lien on the Property pursuant to

Federal Rule of Bankruptcy Procedure 7001(2).  *See id.* at 2.  As described in further detail

below, it later became clear to the Court that the relief requested by Count II was a moving

target.  The crux of Count II is the Plaintiff's allegation that the transfer of the Note and Deed of

Trust by Bank of America's predecessor in interest to Bank of New York Mellon, as trustee, was

ineffective because it did not comply with the terms of a pooling and servicing agreement (the

"PSA").[7]  The Plaintiff is not a party to the PSA.

       The Defendants consented to the relief requested in Count I as memorialized by an

amended order approving the loan modification entered in the main bankruptcy case (the

"Amended Loan Modification Order").  *See* Amended Loan Modification Order, ECF No. 147;

*see also* Transcript of January 6, 2015 Pretrial Conference (hereinafter "Tr. (1/6)") at 8, APN 20.

The only claim for relief set forth in the Amended Complaint that remains unresolved is Count

II.

       Since the filing of this adversary proceeding, the Court has convened a plethora of

hearings and pretrial conferences.[8]  The Court held a pretrial scheduling conference on July 21,

---

[6] "ECF No." refers to a docket entry in the above-captioned main bankruptcy case, and "APN" refers to a docket entry in the adversary proceeding.

[7] The PSA is included as part of a Form 8-K filed by the Plaintiff on April 25, 2015, as Exhibit 2 to her Memorandum of Law on Standing and Choice of Law.  *See* Exhibit 2, APN 31. The Defendants agree that the PSA can be found in Exhibit 2 from pages 8 through 167.  *See* Response to Debtor's Memorandum of Law on Standing and Choice of Law, at 3, APN 44.

[8] The Court convened hearings in this adversary proceeding on January 6, 2015; March 17, 2015; June 30, 2015; July 8, 2015; and July 21, 2015.

2015, at which the parties represented they did not intend to file any additional pretrial briefs.  At the conclusion of this pretrial scheduling conference, the Court advised that it would determine whether the Plaintiff has standing to maintain Count II when the count is based on alleged violations of a contract—the PSA—to which the Plaintiff is not a party.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  This is a core matter. 28 U.S.C. § 157(b)(2)(K).[9]  Having considered the parties' pleadings and applicable case law, the Court issues this Memorandum Opinion.  For the reasons discussed below, Count II will be dismissed.

## I.  The Amended Complaint and Answer

The central theme of the Amended Complaint is the Plaintiff's uncertainty regarding the identity of the holder of the Note secured by the Deed of Trust on the Property.

The Amended Complaint highlights several alleged discrepancies between the Loan Modification Order and Bank of New York Mellon's original and amended proofs of claim that the Plaintiff believes call into question the identity of the holder of the Note and beneficiary of the Deed of Trust, the holder of the Note's intention to abide by the terms of the underlying loan modification agreement, and the validity of the Loan Modification Order.  *See* Amended Complaint at 4-5, 7-8.  To clarify this perceived uncertainty and ensure the holder of the Note will honor the terms of the Loan Modification Order, the Amended Complaint requests the relief set forth in Count I.  *Id.* at 8-9.  As noted above, that relief was granted.  *See* Amended Loan Modification Order, ECF No. 147.

The Amended Complaint also describes the Plaintiff's past attempts to participate in the National Mortgage Settlement (the "NMS"), which proved unsuccessful because (1) Bank of

---

[9] To the extent this not a core matter, this Memorandum Opinion contains proposed findings of fact and conclusions of law.

America maintained that it does not hold the Note and (2) the Plaintiff was not in default on the relevant date as a result of the loan modification. *See* Amended Complaint at 5; *see also United States v. Bank of Am. Corp.*, No. 1:12-cv-00361-RMC, Doc. 11 (D.D.C. April 4, 2012) (setting out the terms of the NMS as to Bank of America, *et al.*). Based upon research the Plaintiff undertook following Bank of America's determination that she was ineligible for NMS relief, the Amended Complaint alleges that the transfer of the Plaintiff's Note and Deed of Trust (collectively, the "Mortgage Documents") from Bank of America's predecessor in interest, Countrywide Home Loans, Inc.,[10] ("Countrywide") to Bank of New York Mellon, as trustee, was ineffective. Amended Complaint at 5-6. Specifically, the Plaintiff contends that Bank of America holds the Note because Countrywide "failed to complete the documentation required to assign the Note"[11] to the trust for which Bank of New York Mellon is trustee. *Id.* at 6.

---

[10] The Court will assume for purposes of this Memorandum Opinion that Bank of America is Countrywide's successor in interest through its acquisition of Countrywide Financial Corporation on July 1, 2008. Bank of America Completes Countrywide Financial Purchase, http://investor.bankofamerica.com/phoenix.zhtml?c=71595&p=irol-newsArticle&ID=1171009 #fbid= m GDAK7Ec 1oZ (last visited Dec. 17, 2015).

[11] The express language of the Amended Complaint references the assignment of the Note. Amended Complaint at 6. The Court observes that the PSA—which is critical to the Amended Complaint, but never expressly referenced therein—uses the word "assign," in conjunction with words including "sell" and "transfer," to reference the conveyance of mortgage loans to the trust. *See* PSA § 2.01. This is distinct from the assignment of the related mortgage, which transfers the security for the indebtedness. *See, e.g.*, *id.* § 2.01(c)(ii), (iii).

Although the Amended Complaint observes there are multiple endorsements to the Note, the Amended Complaint does not allege that any of the endorsements—including the final endorsement in blank—are invalid. *See* Amended Complaint at 5. Further, the Plaintiff does not dispute the Note is being held by Bank of New York Mellon, as trustee. *See* Transcript of March 17, 2015 Hearing at 3, APN 61 ("The problem is that the loan, while it's acknowledged as being held by the trust, is -- the trust is not a legitimate holder. . . . [A]ll matters that had to be accomplished in order for this note and deed of trust to come . . . into the trust, were not accomplished timely."). Instead, the Plaintiff contends that, irrespective of the validity of the endorsements or the trust's possession of the Note that is payable to the bearer, the transfer of the Mortgage Documents to the trust failed and the trust cannot be the holder of the Note because the

Additionally, the Amended Complaint alleges that "Countrywide missed certain deadlines for completing the document transfer to [Bank of New York Mellon], and that the Note never made it to [Bank of New York Mellon's trust]."  *Id.* at 7.

Finally, the Plaintiff asserts the Note and Deed of Trust may have become separated and, if the Note and Deed of Trust "have become separated and are held by different entities," she may own the property "free and clear of liens."  *Id.* at 8.

In the Answer, the Defendants deny the Plaintiff's allegations of deficiencies with respect to Countrywide's transfer of the Note to the trust and the Plaintiff's contentions regarding the effect of these alleged deficiencies on the validity of the transfer.  *See* Answer ¶¶ 18, 26-27.  The Defendants respond to the allegations of the Amended Complaint by asserting that Bank of America services the Note and Bank of New York Mellon is the owner of the Note, which is endorsed in blank and payable to the bearer.  *Id.* ¶¶ 28(a), 28(b), 28(c).  As a result of the loan modification approved by the Loan Modification Order, the Defendants state that the Plaintiff is not in default under the Note.  *Id.* ¶ 28(d).  As to the validity of the Loan Modification Order, the Defendants contend the order is valid and adequate, but would assent to an amended order that clearly identifies both the owner and servicer of the Note.  *Id.* ¶ 29.

## II.  Subsequent Proceedings and Briefing

At the initial pretrial conference held on January 6, 2015 (the "January Pretrial Conference"), Defendants' counsel represented that Bank of New York Mellon holds the Note

---

Deed of Trust was not timely and properly assigned in compliance with the PSA.  *See id.* at 3, 16.

Thus, the Court construes the Plaintiff's allegations in the Amended Complaint regarding the transfer of the Note as derived from her theory that assignment of the Deed of Trust pursuant to the terms of the PSA is a necessary condition to affect the transfer of the Mortgage Documents—including the Note—to the trust.

and Bank of America services the Note and maintains possession of the original Note only in its capacity as servicer, which Note could be provided to be inspected. *See* Tr. (1/6) at 4; *see also* Answer ¶¶ 28(a), 28(b), 28(c).

To address the Plaintiff's concern surrounding the fact that Bank of America is identified as the "Lender" in the Loan Modification Order, Defendants' counsel agreed to the entry of an amended order approving the loan modification that would identify Bank of New York Mellon as the holder of the Note and bind Bank of New York Mellon to the terms of the Loan Modification Order, consistent with Defendants' representations in the Answer. Tr. (1/6) at 7-8; *see* Answer ¶ 29.

At the January Pretrial Conference, the Court rejected the Plaintiff's theory asserted in the Amended Complaint that the Note and Deed of Trust could have become "bifurcated" such that the holder of the Note would lose its security interest in the Property. *See* Tr. (1/6) at 9.[12] Accordingly, the Court believed it had resolved any lingering uncertainty regarding the validity of the lien on the Property.[13]

As the result of the January Pretrial Conference, the Court directed the parties to jointly submit an order, holding, in pertinent part, that Bank of New York Mellon holds the Note and Bank of America services the Note. *See id.* The Court also directed the parties to submit an

---

[12] This theory has no basis in law. "If there has been a 'split' between the Note and Deed [of Trust] . . . the transferee of the Note nevertheless receives the debt in equity as a secured party." *Upperman v. Deutsche Bank Nat'l Trust Co.*, No. 1:10-cv-00149-CMH-IDD, 2010 WL 1610414, at *3 (E.D. Va. Apr. 16, 2010) (*citing Williams v. Gifford,* 124 S.E. 403, 404 (Va. 1924)); *see also Wolf v. Fed. Nat'l Mortg. Ass'n*, 830 F. Supp. 2d. 153, 162-63 (W.D. Va. 2011), *aff'd*, 512 F. App'x 336 (4th Cir. 2013) (citing *Horvath v. Bank of N.Y.*, 641 F.3d 617, 623-624 (4th Cir. 2011)) (recognizing that the transfer of a note or the assignment of a deed of trust cannot split one from the other).

[13] At this stage in the proceedings, the Court was unable to discover the PSA's critical part with respect to the Plaintiff's claim for relief because the Amended Complaint neither specifically references nor attaches the PSA.

order amending the Loan Modification Order in the main bankruptcy case to clarify that Bank of New York Mellon is the holder of the Note and consents to be bound by the terms of the Loan Modification Order. *See id.*

Plaintiff's counsel subsequently prepared and presented the Amended Loan Modification Order to the Court, endorsed by Defendants' counsel and counsel for the Chapter 13 Trustee, establishing that (i) Bank of New York Mellon holds the Note, (ii) Bank of America services the Note, and (iii) Bank of New York Mellon agrees to be bound by the terms contained in the Loan Modification Order. *See* Amended Loan Modification Order, ECF No. 147. The Amended Loan Modification Order was entered by the Court. *Id.* The Amended Loan Modification Order, therefore, affords the relief requested by Count I.

Defendants' counsel presented a separate proposed order in the adversary proceeding memorializing the Court's ruling with respect to the identities of the holder and servicer of the Note, which Plaintiff's counsel endorsed with objection. *See* Transcript of March 17, 2015 Hearing (hereinafter "Tr. (3/17)") at 2, APN 61. Given that the Court had afforded the Plaintiff the relief she requested in the Amended Complaint and that the Amended Loan Modification Order—an order both requested by and submitted on behalf of the Plaintiff—established that Bank of New York Mellon holds the Note and Bank of America services the Note, the Court declined to enter the order and instead convened a hearing on March 17, 2015 (the "March Hearing"), to better understand the Plaintiff's apparent unwillingness to take "yes" for an answer.

At the March Hearing, Plaintiff's counsel explained that she endorsed the order memorializing the Court's ruling with objection because the Plaintiff believed the Court's ruling at the January Pretrial Conference had circumscribed the relief requested by the Amended

8

Complaint.  *See id.* at 3.  The Plaintiff argued that the Court's ruling at the January Pretrial Conference did not determine whether Bank of America's[14] transfer of the Mortgage Documents to Bank of New York Mellon, as trustee, was ineffective because it was made in violation of the terms of the PSA, a determination not clearly requested in the Amended Complaint.  *See id.* at 3-4.  As elaborated for the initial time at the March Hearing, the Plaintiff contends the transfer violated the terms of the PSA because an assignment of the Deed of Trust to the trust was never timely executed by the proper party pursuant to the terms of the PSA.  *Id.* at 3-4, 16.[15]  On this basis, the Plaintiff requested a judicial determination that Bank of America—not Bank of New York Mellon—holds the Note secured by the Property, which the Plaintiff believes would render her eligible for NMS relief.  *Id.* at 4-5.

The March Hearing—held six months after the Amended Complaint was filed—marked the first point at which the Plaintiff articulated and the Court understood that the relief requested in Count II is entirely founded on Countrywide's alleged noncompliance with the PSA.  Indeed, because the Amended Complaint never references the PSA, the Court could not comprehend the relief requested in Count II from the Plaintiff's conclusory allegations in the Amended Complaint that Countrywide failed to complete required documentation and missed unspecified deadlines with respect to the transfer of the Plaintiff's Mortgage Documents.  *See* Amended Complaint at 5-6, 7.

Now aware that Count II depended entirely upon the Plaintiff's ability to enforce the alleged violations of the PSA, the Court ordered the Plaintiff to brief several issues, including why she has standing to raise the PSA—an agreement to which she is not a party—as the basis

---

[14]  The Court notes that Bank of America and Countrywide were often used synonymously during proceedings and in the pleadings.

[15]  *See also supra* n.11.

for her claim. *See* Order Directing the Filing of Documents and Briefs at 5, APN 26 (hereinafter "Briefing Order"). The Briefing Order also directed the Defendants to file a response brief and a copy of the Note with an affidavit of the custodian of records in support of the representations made in the Answer and by Defendants' counsel. *Id.*

The Defendants filed the affidavit with a copy of the Note. *See* APN 28. On April 24, 2015, counsel for the Plaintiff subsequently filed a Memorandum of Law on Standing and Choice of Law. *See* Memorandum of Law on Standing and Choice of Law, APN 29 (hereinafter "First Brief"). The Defendants' timely filed a response to the First Brief on May 15, 2015. *See* Response to Debtor's Memorandum of Law on Standing and Choice of Law, APN 44 (hereinafter "Response Brief"). By oral ruling, the Court permitted the Plaintiff to file a supplemental brief on the standing issue. *See* Transcript of June 30, 2015 Hearing (hereinafter "Tr. (6/30)") at 22, APN 62. The Plaintiff filed the supplemental brief *pro se*[16] on July 6, 2015. *See* Brief, APN 52 (hereinafter "Second Brief"). Shortly after filing the Second Brief and ostensibly to enhance the arguments raised in that brief, the Plaintiff also filed a document *pro se* styled as a personal affidavit, which was not specifically authorized by the Court. *See* Affidavit of Sheryl S. Stanworth, APN 55 (hereinafter "Affidavit").

The Court carefully limited the scope of the issues in the initial briefing to the Plaintiff's standing to enforce the terms of the PSA as a nonparty to the agreement and related issues of choice of law and conflicts of law. The Second Brief presented the Plaintiff an opportunity to supplement her argument on the standing issue. While the Plaintiffs' briefs do, in part, address

---

[16] Plaintiff's counsel filed a motion to withdraw as counsel following the pretrial conference held June 30, 2015. *See* Motion to Withdraw, APN 47, ECF 167. Following an expedited hearing, the Court granted counsel's request to withdraw by orders entered July 20, 2015, in both the adversary proceeding and main bankruptcy case. *See* Order Granting Motion to Withdraw as Counsel, APN 58, ECF 172. Thereafter, the Plaintiff elected to proceed *pro se*.

the legal issues of concern to the Court, the First Brief, Second Brief, and Affidavit all seek to expand the factual allegations and legal theories in support of Count II of the Amended Complaint. The Briefing Order provided a forum only to address the legal issues presented by the Court and the facts related to those narrow issues. The Court did not authorize the Plaintiff, either by counsel or *pro se,* to amend the Amended Complaint *de facto* by raising new claims or alternative legal theories in support of the ultimate relief she seeks in Count II. *See Pegram v. Herdrich,* 530 U.S. 211, 230, n.10 (2000) (briefs may be used to clarify or elaborate on the allegations and claims in a complaint); *see also* Fed. R. Bankr. P. 7015; Fed. R. Civ. P. 15(a)(2). Thus, the Court will only evaluate the contents of the First Brief, Second Brief, and Affidavit to the extent they address the narrow legal issues the Court permitted the Plaintiff to brief. The Court will likewise consider the Response Brief insofar as it is responsive to the legal issues the Court directed the parties to brief.

Following the pretrial scheduling conference on July 21, 2015, the Court advised it would determine whether the Plaintiff has standing to maintain Count II, which is premised entirely upon her ability to enforce alleged violations of the PSA. For the reasons discussed below, the Court will dismiss Count II of the Amended Complaint *sua sponte* for lack of prudential standing.

### III. Analysis

### A. Standing

In Count II, the Plaintiff requests a judicial determination of the validity of the lien of the Deed of Trust securing the Note on the Property pursuant to Federal Rule of Bankruptcy Procedure 7001(2). Under the structure of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) and the Federal Rules of Bankruptcy Procedure, the Plaintiff may bring this action. However, the

authority to bring this action is not unlimited.  The Plaintiff's standing to obtain this relief is limited by the allegations of the Amended Complaint.  Specifically, Count II is founded upon the Plaintiff's ability to assert noncompliance with the PSA.  Thus, the Court must determine the Plaintiff's standing to maintain her claim on this theory.

Standing is a threshold issue in federal litigation because it determines "the propriety of judicial intervention."  *Warth v. Seldin*, 422 U.S. 490, 518 (1975).  The standing doctrine is comprised of two distinct components:  constitutional standing and prudential standing.  *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

To obtain constitutional standing, a party must satisfy three requirements:

(1) [the party] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 423 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).  As its label suggests, constitutional standing derives from "Article III of the United States Constitution, which limits judicial authority to 'Cases' and 'Controversies.'"  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992) and *Warth,* 422 U.S. at 498).

By comparison, prudential standing is the product of three self-imposed nonconstitutional limitations on the federal courts' adjudicative authority. *Id.* (citing *Allen*, 468 U.S. at 751; *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982)).  A party must observe the following prudential standing considerations:

First, "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."  *Warth*, 422 U.S. at 499; *see, e.g.*, *United States v. Richardson*, 418 U.S. 166 (1974).  Second, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth*, 422 U.S. at 499; *accord Valley*

*Forge*, 454 U.S. at 474.  Third, "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *see, e.g.*, *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970).

*Id.*

The second prudential standing consideration is relevant here because Count II rests on the Plaintiff's ability to enforce a contract to which she is not a party.

### 1.   The Court's Authority to Examine Prudential Standing

Other courts have reached the issue of whether a borrower has standing to dispute compliance with a pooling and servicing agreement in the context of a motion to dismiss or a motion for summary judgment filed by a defendant.  *See, e.g.*, *Grenadier v. BWW Law Grp.*, No. 1:14-cv-00827-LMB-TCB, 2015 WL 417839, at *1 (E.D. Va. Jan. 30, 2015); *Figueroa v. Deutsche Bank Nat'l Tr. Co.*, No. 1:13-cv-00592-AJT-TRJ, 2013 U.S. Dist. LEXIS 180404, at *1 (E.D. Va. July 10, 2013), *aff'd*, 548 F. App'x 85 (4th Cir. Dec. 19, 2013).  However, in this case, the Defendants have not filed a dispositive motion on the issue of the Plaintiff's standing. Prior to the Court's directive to brief the issue of the Plaintiff's standing to assert the PSA as the basis for Count II, the Defendants had only referenced standing in their boilerplate affirmative defenses.  *See* Answer at 6-7.  Thus, to the extent the Defendants' failed to properly raise prudential standing, the Court must first address its authority to raise the issue *sua sponte*.

The circuits are divided regarding whether a court's consideration of prudential standing is permissive or mandatory when the parties have failed to properly raise the issue.  Several circuits have concluded that prudential standing is jurisdictional in nature such that the issue cannot be waived and the court's inquiry is mandatory.  *See, e.g.*, *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 674 (D.C. Cir. 2013) (quoting *Animal Legal Def. Fund, Inc. v. Espy*, 29

F.3d 720, 723 n.2 (D.C. Cir. 1994)) ("[T]his Circuit treats prudential standing as 'a jurisdictional issue which cannot be waived or conceded' . . . ."); *Cmty. First Bank v. Nat'l Credit Union Admin.*, 41 F.3d 1050, 1053 (6th Cir. 1994), *amended* (May 8, 1995) ("Standing is not an affirmative defense that must be raised at risk of forfeiture. Instead, it is a qualifying hurdle that plaintiffs must satisfy even if raised *sua sponte* by the court."); *Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) ("The jurisdictional nature of the standing inquiry, therefore, convinces us that we have an independent obligation to examine [the plaintiff's] standing . . . .").

Other circuit courts have determined that the issue of prudential standing is waivable, holding that a court may either examine prudential standing *sua sponte* or deem it waived if a party fails to assert the issue. *See, e.g.*, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1162 (10th Cir. 2013), *aff'd sub nom.*, *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) (citations omitted) ("Prudential-standing limitations are subject to waiver. But this court has discretion to address prudential standing *sua sponte*."); *Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417-18 (5th Cir. 2012) (observing that prudential standing arguments are waivable and the court may determine whether to consider the issue *sua sponte*); *City of Los Angeles v. County of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) ("[T]he permissive language in our caselaw— 'can be deemed'—indicates that the choice to reach the question [of prudential standing] lies within our discretion."); *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008) ("[T]he court may raise an unpreserved prudential-standing question on its own, but unlike questions of constitutional standing, it is not obliged to do so.").

Further, in circuits that have not yet considered the issue, federal district courts have also determined that a court is, at minimum, authorized to raise prudential standing on its own when the parties have not. *See, e.g.*, *Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Eng'rs*, No.

14

2:12-cv-06689, 2014 WL 4102478, at *12 (S.D. W. Va. Aug. 18, 2014); *Ricci v. Okin*, 770 F.

Supp. 2d 438, 443 (D. Mass. 2011); *Nat'l Fed'n of Republican Assemblies v. United States*, 218

F. Supp. 2d 1300, 1310-11 (S.D. Ala. 2002), *vacated sub nom. on other grounds*, *Mobile

Republican Assembly v. United States*, 353 F.3d 1357 (11th Cir. 2003).[17]

　　　While the Fourth Circuit Court of Appeals has not directly addressed the narrow issue of

a court's capacity to consider prudential standing when the parties have failed to raise it, the

court has observed that prudential standing is not jurisdictional in nature.  *See United States v.

Day*, 700 F.3d 713, 721 (4th Cir. 2012) (quoting *Finstuen v. Crutcher*, 496 F.3d 1139, 1147

(10th Cir. 2007)).  On that basis, the Fourth Circuit may adopt the reasoning of the circuits that

hold a court has the discretion either to examine prudential standing *sua sponte* or deem the issue

waived when the parties have failed to raise it.  At minimum, virtually all cases demonstrate that

a court has discretion to reach the issue *sua sponte* and, therefore, this Court need not

hypothesize whether the Fourth Circuit would ultimately hold that a court's examination of

prudential standing is permissive or mandatory.

　　　Accordingly, to the extent the Defendants waived the issue of prudential standing in this

case, the Court elects to consider the Plaintiff's standing to assert the PSA as the basis for relief

under Count II on its own initiative.[18]  *See Haulmark Servs., Inc. v. Solid Grp. Trucking, Inc.*,

---

[17] Several bankruptcy courts have also invoked their authority to examine prudential standing *sua sponte*.  *See e.g.*, *In re Grason*, 486 B.R. 448, 457 (Bankr. C.D. Ill. 2013) (citing *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012)); *Ag Venture Fin. Servs., Inc. v. Montagne* (*In re Montagne*), 421 B.R. 65, 79 (Bankr. D. Vt. 2009) (citing *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 749 (7th Cir. 2007); *Thompson*, 15 F.3d at 248); *Lohmeyer v. Alvin's Jewelers* (*In re Lohmeyer*), 365 B.R. 746, 753 (Bankr. N.D. Ohio 2007) (citing *Cmty. First Bank*, 41 F.3d at 1053).

[18] *See Pyramid Transp., Inc. v. Greatwide Dallas Mavis, LLC*, No. 3:12-CV-0149-D, 2013 WL 3834626, at *1 (N.D. Tex. July 25, 2013) ("[T]he court raised *sua sponte* that [the plaintiff]'s . . . claim should be dismissed because [the plaintiff] lacks prudential standing and

No. H-14-0568, 2014 WL 5768685, at *2 (S.D. Tex. Nov. 5, 2014) (quoting *Pyramid Transp., Inc. v. Greatwide Dallas Mavis, LLC*, No. 3:12-CV-0149-D, 2013 WL 840664, at *4 (N.D. Tex. Mar. 7, 2013) ("[T]he court could *sua sponte* raise the issue of whether [the plaintiff] can recover because 'the limits of prudential standing "require[] that a plaintiff must assert its own legal rights and interests, and [not] rest its claim to relief on the legal rights or interests of third parties."'"). As noted above, the Plaintiff must assert her own legal rights, not the rights of third parties. Here, this requires a determination of the Plaintiff's rights, if any, under the PSA. That inquiry begins with an examination of the applicable law guiding the Court's analysis.

## 2. Choice of Law

In framing the choice of law analysis, the Court must emphasize that it is not resolving the Plaintiff's claim regarding the effect of alleged noncompliance with the PSA on the identity of the holder of the Note secured by the Deed of Trust on the Property; rather, the question before the Court is whether the Plaintiff has standing to enforce the terms of the PSA as the basis for her claim. The PSA provides that it will be construed and governed in accordance with substantive New York law, and that New York law will dictate the obligations, rights, and remedies of the parties and certificateholders. PSA § 10.03 (the "Choice of Law Provision"). However, the parties do not agree that the Choice of Law Provision should dictate the substantive law the Court will apply to determine the Plaintiff's standing to enforce the PSA.

The Plaintiff contends in the First Brief the Choice of Law Provision would govern a determination of the identity of the holder of the Note, but the Plaintiff does not clearly address whether the Choice of Law Provision governs the threshold issue of her standing to enforce the

---

permitted [the plaintiff] to file an opposition response."); *Gaudin v. Saxon Mortg. Servs., Inc.*, 820 F. Supp. 2d 1051, 1052 (N.D. Cal. 2011) (internal citation and quotation marks omitted) ("Because standing is a . . . threshold determinant[] of the propriety of judicial intervention, which may be raised *sua sponte*, the parties were ordered to brief the question . . . .").

PSA to seek such a determination. First Brief at 12; *see also* Affidavit ¶ 3 (generally contending

New York law is applicable). The Defendants assert, without offering any supporting authority,

that the Choice of Law Provision is wholly inapplicable in this adversary proceeding because the

Plaintiff is neither a party to the PSA nor a certificateholder. Response Brief ¶ 15. The Court is

not persuaded by the Defendants' argument, which is based on an assumed conclusion regarding

the substantive issue the Court seeks to resolve. It will thus undertake an independent analysis of

the issue.

A bankruptcy court applies the choice of law rules of the forum state, which in the instant

case is the law of Virginia. *Compliance Marine, Inc. v. Campbell* (*In re Merritt Dredging Co.*)

839 F.2d 203, 206 (4th Cir. 1988); *McCarthy v. Giron*, 1:13-CV-01559-GBL-TCB, 2014 WL

2696660, at *10 (E.D. Va. June 6, 2014) ("[A]bsent a compelling federal interest that dictates

otherwise, a bankruptcy court is to apply the forum state's choice of law principles for claims

that are the subject of state law . . . ."); *see* Response Brief ¶ 13. Defendants properly

acknowledge that Virginia courts generally enforce choice of law provisions to decide issues of

substantive law, whereas procedural questions are decided by reference to Virginia law.

Response Brief ¶ 14 (citing *Hooper v. Musolino*, [364 S.E.2d 207, 211] (1988). Standing to

enforce the terms of a contract is a matter of contract interpretation, which is an issue of

substantive law. *See Vollmar v. CSX Transp., Inc.*, 705 F. Supp. 1154, 1166 (E.D. Va. 1989)

(citing *KECO Indus., Inc. v. ACF Indus., Inc.*, 316 F.2d 513, 514 (4th Cir. 1963); *Chesapeake*

*Supply & Equip. Co. v. J.I. Case Co.,* 700 F. Supp. 1415 (E.D. Va. 1988)).

Accordingly, when a contract contains a choice of law provision, a court that is applying

Virginia law will invoke that provision to determine whether nonparties qualify to enforce the

terms of the contract. *See, e.g.*, *Canal Ins. Co. v. Lebanon Ins. Agency, Inc.*, 504 F. Supp. 2d

113, 119 (W.D. Va. 2007). The United States District Court for the Western District of Virginia

recognized that the Virginia Supreme Court will enforce choice of law provisions against parties

to a contract and reasoned that application of a contract's choice of law provision to determine a

nonparty's status to sue as a third-party beneficiary would similarly effectuate the contracting

parties' intent. *Id.* Pursuant to the choice of law provision in the contract, the court in *Canal*

*Insurance* applied North Carolina law, rather than Virginia law, in performing its analysis of

whether the plaintiff could withstand dismissal of its claim as a matter of law by establishing

third-party beneficiary status. *Id.*

It follows then that the Choice of Law Provision dictates the substantive law the Court

will apply in this case to analyze the Plaintiff's standing to enforce the PSA as a nonparty to the

agreement. The Choice of Law Provision directs that New York law applies. Accordingly, the

Court will look to New York law to determine whether the Plaintiff may allege noncompliance

with the terms of the PSA as the basis for Count II.

### 3. Plaintiff Lacks Standing to Enforce Noncompliance with the PSA Because She is Neither a Party to nor an Intended Third-Party Beneficiary of the PSA

The Amended Complaint makes no explicit reference to the PSA, yet the relief the

Plaintiff seeks under Count II is nevertheless entirely dependent upon her ability to enforce

various terms of the PSA. This is because the Plaintiff alleges in the Amended Complaint that, if

Countrywide failed to timely complete the required documentation to transfer the Mortgage

Documents to the trust, the transfer to the trust was ineffective. Amended Complaint at 5-6, 7.

Despite the vague and attenuated allegations in the Amended Complaint, it is now apparent to

the Court that the Plaintiff's contentions are based upon the terms of the PSA governing the trust,

which she asserts required Countrywide to transfer the Mortgage Documents to the trust (1) by a

date certain and (2) with an assignment of the Deed of Trust in compliance with the PSA. *See*

18

Tr. (3/17) at 3-4. Simply put, the Plaintiff argues that a PSA-compliant assignment of the Deed

of Trust was necessary to complete the transfer of the Note and Deed of Trust to Bank of New

York Mellon, as trustee, even if the Note was negotiated to the trust. First Brief at 10-11; *see*

*also* Tr. (3/17) at 16.

As a general matter, courts have arrived at a "judicial consensus" that homeowners lack

standing to assert noncompliance with pooling and servicing agreements or related contracts

between lenders as the basis for a claim for relief:

> Whatever the context, it appears that a judicial consensus has developed holding
> that a borrower lacks standing to (1) challenge the validity of mortgage
> securitization or (2) request a judicial determination that a loan assignment is
> invalid due to noncompliance with a pooling and servicing agreement, when the
> borrower is neither a party to nor a third party beneficiary of the securitization
> agreement, *i.e.*, the PSA.

*In re Walker*, 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012) (collecting cases).

Multiple circuit courts have expanded the "judicial consensus." *See, e.g.*, *Rogers v. Bank*

*of Am.*, 787 F.3d 937, 939 (8th Cir. 2015); *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79,

87 (2d Cir. 2014); *Dauenhauer v. Bank of N.Y. Mellon*, 562 F. App'x 473, 480 (6th Cir. 2014);

*Davies v. Deutsche Bank Nat'l Tr. Co.* (*In re Davies*), 565 F. App'x 630, 633 (9th Cir. 2014);

*Edward v. BAC Home Loans Servicing, L.P.*, 534 F. App'x 888, 891 (11th Cir. 2013).[19]

---

[19] Although the Fourth Circuit is not among the circuits that have addressed the issue, district courts within the Fourth Circuit have likewise concluded that homeowners lack standing to enforce terms of a pooling and servicing agreement because they are neither parties to nor intended third party beneficiaries of these contracts. *See McGee v. Countrywide Bank,* No. 1:12CV772, 2013 WL 942394, at *3 (M.D.N.C. Mar. 11, 2013) (citing *In re Walker*, 466 B.R. at 285; *Bittinger v. Wells Fargo Bank*, 744 F. Supp. 2d 619, 625 (S.D. Tex. 2010); *In re Kain*, Adv. No. 10-80047-HB, 2012 WL 1098465 (Bankr. D.S.C. Mar. 30, 2012)); *Wittenberg v. First Indep. Mortg. Co.*, No. 3:10-CV-58, 2011 WL 1357483 (N.D.W. Va. Apr. 11, 2011) (citing *Bittinger*, 744 F. Supp. 2d at 625-26; *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 425 n.10 (S.D.N.Y. 2010)).

In *Rajamin*, a group of homeowners sought a determination that securitized trusts did not own their loans and mortgages because the parties to the trusts' pooling and servicing agreements did not comply with their terms. *Rajamin*, 757 F.3d at 80-81. In considering whether the homeowners had standing to bring their claims, the Second Circuit Court of Appeals distinguished between third-party beneficiaries to contracts—who are able to enforce the terms of a contract because the contracting parties intended to confer a benefit upon them—and mere incidental beneficiaries, who are not permitted to maintain a suit on a contract under New York law. *Id.* at 86 (citing *Mendel v. Henry Phipps Plaza W. Inc.*, 844 N.E.2d 748, [751] (N.Y. 2006); Restatement (Second) of Contracts § 315 (1981)).[20] The court concluded that the homeowners had failed to demonstrate any intention on the part of the parties to the pooling and servicing agreements that the homeowners would be beneficiaries of the agreements. *Id.* at 87. On that basis, the court affirmed the district court's ruling that the plaintiffs lacked standing to enforce the pooling and servicing agreements as they were neither parties to nor intended third-party beneficiaries of the contracts. *Id.* The court further found that this determination was unaffected by the homeowners' contention that their underlying mortgage documents conferred standing to enforce the terms of the pooling and servicing agreements, reasoning that "the notes and deeds of trust to which plaintiffs were parties did not confer upon plaintiffs a right against non-parties to those agreements to enforce obligations under separate agreements to which plaintiffs were not parties." *Id.*

---

[20] The distinction between intended third-party beneficiaries and incidental beneficiaries, who may be unintentionally benefitted by the performance of a contract, is widely recognized across jurisdictions. *See* 13 Williston on Contracts § 37:21 (4th ed. 2015) (collecting cases).

The Court concludes that, in accordance with the Second Circuit's decision in *Rajamin* and the wider judicial consensus, the Plaintiff—who is a nonparty to the PSA—must establish that she is an intended third-party beneficiary of the PSA to maintain Count II.

First, rather than assert that she is an intended third-party beneficiary to the PSA contract upon which Count II is founded, the Plaintiff instead argues that she has standing to enforce the PSA because Count II is a proceeding to determine the validity of the lien on her residence, which she believes will enhance her ability to pursue relief under the NMS, and, therefore, she is raising her own legal rights and contends that "a more particularized grievance is difficult to imagine . . . ." *See* First Brief at 9-10. However, the Plaintiff's argument misses the mark. Regardless of whether this proceeding implicates her personal residence or the ultimate relief the Plaintiff wished to pursue under the NMS, Count II nevertheless rests upon her ability to enforce the PSA as the basis for her claim. Therefore, the Court finds that neither the nature of this proceeding nor its subject matter confers standing to enforce the PSA when the Plaintiff is a nonparty to the agreement.

In the alternative, based upon reasoning adopted by an Alabama state court in *Horace v. LaSalle Bank*, No. CV 08-362 (Ala. Cir. Ct. Mar. 30, 2011) (unpublished decision), the Plaintiff asserts that she has standing to enforce the PSA as an intended third-party beneficiary because she and other borrowers would have been unable to obtain mortgage financing if not for the ultimate pooling and securitization of loans under the PSA. *See* Affidavit ¶ 3; *see also* Tr. (6/30) at 17-18. The United States District Court for the Western District of Virginia rejected a homeowner's argument, also founded upon the reasoning in *Horace*, that her lender reduced its underwriting standards based upon its future intention to securitize her loan: "[T]his Court is unpersuaded that the reduction of underwriting standards based upon an intent to securitize a

loan automatically makes the borrower an intended beneficiary of a later-established pooling and servicing agreement." *Wittenberg v. First Indep. Mortg. Co.*, No. 3:10-CV-58, 2011 WL 1357483, \*22 (N.D.W. Va. Apr. 11, 2011); *see also Rhodes* v. *JPMorgan Chase Bank*, No. 12-80368-CIV, 2012 WL 5411062, at \*4 n.2 (S.D. Fla. Nov. 6, 2012) ("*Horace* . . . is a memorandum order which does not provide any legal authority or factual background, therefore it is of limited use and is neither binding nor persuasive."). This Court is equally unpersuaded by the rationale in *Horace* and specifically adopts the reasoning of the *Wittenberg* and *Rhodes* courts in rejecting its application in this case. Accordingly, the Court finds the Plaintiff has failed to establish that she is an intended beneficiary of the PSA based upon a purported connection between the PSA or pooling and servicing agreements generally and the availability of mortgage financing.

The Plaintiff has not offered any other argument or pointed to any provision in the PSA that suggests that she is an intended beneficiary of the agreement. Instead, the Plaintiff focuses primarily on her eligibility for NMS relief.[21] *See, e.g.*, First Brief at 9-10. Even if her allegations with respect to the parties' obligations under the PSA are correct, any potential benefit to the Plaintiff under the NMS is completely unrelated to the PSA. Accordingly, the Court finds that this makes the Plaintiff, at most, an incidental beneficiary of the agreement. As the Second Circuit observed in *Rajamin*, to acquire enforceable contract rights as an intended beneficiary, a benefit cannot be merely incidental. *Rajamin*, 757 F.3d at 86. Thus, applying the reasoning from *Rajamin* and the wider judicial consensus, the Court concludes the Plaintiff lacks

---

[21] The Defendants dispute that the Plaintiff would qualify for relief under the NMS because, even if Bank of America was the holder of the Plaintiff's loan, the loan was not in default on the relevant date. *See* Response Brief ¶ 10 n.1.

standing to enforce the PSA as the basis for Count II because she is not a party to the PSA and has failed to establish that she is an intended third-party beneficiary of the agreement.

### 4. Plaintiff Lacks Standing to Enforce the Terms of the PSA to Challenge the Underlying Assignment of the Deed of Trust as Void

In the Second Brief and Affidavit filed in further support of Plaintiff's standing to base Count II on the alleged noncompliance with the PSA, the Plaintiff asserts she has standing to enforce violations of the PSA to the extent that these violations rendered the assignment of the Deed of Trust void. *See* Second Brief at 2; Affidavit ¶ 8. Thus, the Plaintiff seeks to accomplish indirectly what she could not accomplish directly by reframing her challenge as an attack on the validity of the assignment of the Deed of Trust.

Courts have recognized that a homeowner may assert defects in an assignment if such defects render an assignment "invalid, ineffective, or void." *See Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291 (1st Cir. 2013); *see also Rajamin*, 757 F.3d at 88; *Reinagel v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 225 (5th Cir. 2013); *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010). However, homeowners cannot "challenge shortcomings in an assignment that render it merely *voidable* at the election of one party but otherwise effective to pass legal title." *Culhane*, 708 F.3d at 291 (emphasis added); *see also Rajamin*, 757 F.3d at 90; *Wolf v. Fed. Nat'l Mortg. Ass'n*, 830 F. Supp. 2d. 153, 161 (W.D. Va. 2011), *aff'd*, 512 F. App'x 336 (4th Cir. 2013) (internal citations omitted) (citing *Velasco v. Sec. Nat'l Mortg. Co.*, CV. No. 10–00238, 823 F. Supp. 2d 1061, 1067, 2011 WL 4899935, at *4 (D. Haw. Oct. 14, 2011 and 6A C.J.S. Assignments § 132 (2011)) ("[The homeowner] is not an intended beneficiary of the assignment which is, to be sure, a contract. . . . As such, she lacks standing to challenge the assignment's validity.")

With respect to the interplay between assignments and pooling and servicing agreements, homeowners lack standing to enforce the terms of a pooling and servicing agreement to challenge an underlying assignment because noncompliance with a pooling and servicing agreement does not render an assignment void. *See, e.g.*, *Ferguson v. Bank of N.Y. Mellon Corp.*, No. 14-20585, 2015 WL 5751436, at \*3-4 (5th Cir. Oct. 1, 2015) (applying Texas and New York law); *Rajamin*, 757 F.3d at 86-87, 89-90 (applying New York law); *Butler v. Deutsche Bank Tr. Co. Americas*, 748 F.3d 28, 37 (1st Cir. 2014) (citations omitted) (applying Massachusetts law); *Smith v. Litton Loan Servicing, LP*, 517 F. App'x 395, 398 (6th Cir. 2013) (applying Michigan law); *Deutsche Bank Nat'l Tr. Co. v. Adolfo*, No. 1:12-cv-00759, 2013 WL 4552407, at \*3 (N.D. Ill. Aug. 28, 2013) (applying New York law).  Instead, an assignment in contravention of a pooling and servicing agreement is merely voidable.  *See Rajamin*, 757 F.3d at 87, 90.

In *Rajamin*, the Second Circuit considered homeowners' standing to enforce pooling and servicing agreements to challenge the validity of assignments to securitized trusts under both a breach of contract theory and a breach of trust theory.  *Id.* at 86-87, 87-90.  The court first recognized that, under principles of New York contract law, contract rights may be waived by the parties for whose benefit they were intended, limiting their enforcement to parties and intended third-party beneficiaries and preventing strangers from vindicating the rights of those who choose not to assert them.  *Id.* at 86.  Accordingly, "[a]lthough noncompliance with [pooling and servicing agreement] provisions might have made the assignments unenforceable at the instance of parties to those agreements," only those entities can enforce the agreement for that purpose.  *Id.* at 87.

In further consideration of homeowners' standing to challenge allegedly void assignments, the Second Circuit evaluated whether homeowners had standing to contend under a breach of trust theory that the trusts' acquisition of their loans was void for failure to comply with pooling and servicing agreements. *Id.* at 88. The *Rajamin* court's examination of New York trust law gave rise to the same result: "[W]e conclude that as unauthorized acts of a trustee may be ratified by the trust's beneficiaries, such acts are not void but voidable; and that under New York law such acts are voidable only at the instance of a trust beneficiary or a person acting in his behalf." *Id.* at 90.[22] The court observed that a securitization trust's beneficiaries are its certificateholders. *Id.* Accordingly, the court determined that the homeowners also lacked standing to enforce the alleged violations of the pooling and servicing agreements to challenge their mortgage assignments under a breach of trust theory. *Id.*

There is limited authority that adopts an alternate view of New York trust law. A New York state trial court determined that a borrower may assert that an assignment to a securitization trust is void for failure to comply with the terms of a pooling and servicing agreement because "under New York Trust Law, every sale, conveyance or other act of the trustee in contravention of the trust is void." *Wells Fargo Bank v. Erobobo*, No. 31648/2009, 2013 WL 1831799, at *8 (N.Y. Sup. Ct. Apr. 29, 2013), *rev'd*, 9 N.Y.S.3d 312 (App. Div. 2015), *leave to appeal dismissed*, 37 N.E.3d 1158 (N.Y. 2015). However, the *Erobobo* court's application of New York

---

[22] In a recent opinion, the Honorable Mary Jane Hall of the Circuit Court for the City of Norfolk, Virginia considered whether a borrower could obtain relief relating to a foreclosure of her real property on the basis that the foreclosing entity was not the holder of the note because its acquisition of the note violated the terms of a securitized trust, which operated under New York law. *Burgest v. HSBC Bank, USA*, No. CL14-8747, 2015 WL 6085286, at *2-4 (Va. Cir. Ct. Oct. 9, 2015). The state court followed the majority position set forth in *Rajamin*, 757 F.3d at 90, that "trustee actions in contravention of the trust instrument are voidable, rather than void" under New York law and precluded the plaintiff from asserting a violation of the trust agreement as basis for certain claims. *Burgest*, 2015 WL 6085286, at *3-4.

trust law was specifically rejected by the Second Circuit in *Rajamin*, 757 F.3d at 90, and the trial

court's decision was later reversed by a state appellate court in *Wells Fargo Bank. v. Erobobo*, 9

N.Y.S.3d 312 (App. Div.), *leave to appeal dismissed*, 37 N.E.3d 1158 (N.Y. 2015).   The few

courts that adopted a similar interpretation of New York trust law did so in reliance on *Erobobo*,

prior to both the *Rajamin* decision and the state appellate court's reversal of the trial court.   *See,*

*e.g.*, *Saldivar v. JPMorgan Chase Bank* (*In re Saldivar*), Adv. No. 12-01010, 2013 WL 2452699,

at *4 (Bankr. S.D. Tex. June 5, 2013); *Glaski v. Bank of Am.,* 160 Cal. Rptr. 3d 449, 463 (Ct.

App. 2013).   Accordingly, the Court declines to follow the interpretation of New York law

adopted by the trial court in *Erobobo*.

In support of her argument that she may enforce the PSA to challenge the underlying

assignment as void, the Plaintiff looks to the Vermont Supreme Court's decision in *Dernier v.*

*Mortgage Network, Inc.,* 87 A.3d 465 (Vt. 2013).   Second Brief at 2.   The Plaintiff relies on the

court's statement that the homeowners would have standing to "assert their claims based on

violations of the [pooling and servicing agreement] only if those violations rendered the

assignment to defendant absolutely invalid for breach of the [pooling and servicing agreement]

provisions."   *See id.* (quoting *Dernier*, 87 A.3d at 473).   However, the Plaintiff has separated the

first step in the court's analysis from its final holding.   After framing the scope of its inquiry, the

court then analyzed whether, under New York law, the alleged violations of the pooling and

servicing agreement rendered the mortgage assignment to the trust void or voidable.   *Dernier*, 87

A.3d at 473.   Ultimately, the court adopted the majority position that the homeowners lacked

standing because such violations render the assignments merely voidable.   *Id.* at 475.   In

*Rajamin*, the Second Circuit specifically acknowledged the *Dernier* court's interpretation of New

York law as representative of the majority interpretation of New York trust law adopted in other

jurisdictions. *See Rajamin*, 757 F.3d at 90 (quoting *Dernier*, 87 A.3d at 474) ("[M]ost courts in

other jurisdictions . . . have interpreted New York law to mean that 'a transfer into a trust that

violates the terms of a PSA is voidable rather than void.'"). Thus, the *Dernier* decision provides

no support for the outcome the Plaintiff seeks.

In the Affidavit, the Plaintiff cites an Illinois Appellate Court decision in *Bank of

America v. Bassman FBT, L.L.C.*, 981 N.E.2d 1, *as modified on denial of reh'g* (Ill. App. Ct.

2012) also for the proposition that she may enforce the PSA to challenge the underlying

assignment of the Deed of Trust as void. *See* Affidavit ¶ 8.[23]  However, in an analysis mirroring

that of the *Dernier* court, the *Bassman* court first acknowledged that a borrower's standing to

challenge the validity of an assignment under this theory turns on whether noncompliance with a

pooling and servicing agreement rendered the assignment void or voidable. *Bassman*, 918

N.E.2d. at 8. The court concluded that, under New York law, assignments in contravention of a

pooling and servicing agreement are merely voidable, not void, such that the borrowers lacked

standing to raise the issue. *Id.* at 9-10. Accordingly, *Bassman* also lends no support to the

Plaintiff's argument that she has standing to enforce the PSA on this theory.

The Plaintiff also references an unpublished Michigan circuit court decision in *HSBC

Bank USA v. Young*, 11-000693-AV (Mich. Cir. Ct. Oct. 26, 2012) (unpublished decision) for the

proposition that a homeowner has standing to enforce PSA violations to challenge the

assignment of a mortgage and note. Second Brief at 2. However, the circuit court's decision

was reversed by the Michigan Court of Appeals because the plaintiff lacked standing to

---

[23] In the Affidavit, the Plaintiff also cites a decision of the Court of Civil Appeals of Texas in *Tri-Cities Construction, Inc. v. American National Insurance Co.*, 523 S.W.2d 426 (Tex. Civ. App. 1975) with respect to her argument that a borrower may challenge the validity of an underlying assignment. *See* Affidavit ¶ 8.  However, this decision does not address the question of whether a violation of a pooling and servicing agreement renders an assignment void or merely voidable. Accordingly, the court will not consider it.

challenge the assignment under Michigan law. *HSBC Bank USA v. Young,* No. 313212, 2014 WL 3529418, at *3-4 (Mich. Ct. App. July 15, 2014), *appeal denied*, 859 N.W.2d 513 (Mich. 2015). Accordingly, the Michigan circuit court decision, which is based upon an ultimately rejected interpretation of Michigan law, provides no basis for the Plaintiff's standing to enforce the terms of the PSA to challenge the assignment of the Deed of Trust as void in this matter.

Therefore, the Court finds that the Second Circuit's application of New York law in *Rajamin* is both persuasive and applicable in the instant case. The Court holds that violations of a pooling and servicing agreement merely render an assignment to a securitization trust voidable either by a party or an intended beneficiary as a matter of New York law. As discussed above, the Plaintiff is not a party to the PSA or established that she is an intended third-party beneficiary of the agreement. Accordingly, the Court concludes that the Plaintiff lacks standing to maintain Count II on the basis that noncompliance with the PSA renders the underlying assignment of the Deed of Trust invalid.

### 5.  Plaintiff Lacks Standing to Enforce the PSA on the Basis of Bad Faith

In the First Brief, the Plaintiff contends the *Rajamin* case is distinguishable and her claim should not be barred for lack of standing because she is "*not* challenging an act of the Trustee, but rather [Bank of America]'s use of its 'insider' status to avoid becoming the Noteholder . . . ." First Brief at 9. The Plaintiff further asserts this distinction is dispositive. *Id.* It is the Plaintiff's perception that Bank of America somehow exploited its position as both successor to the seller and master servicer under the PSA to deliberately evade an obligation, which was triggered by the alleged violations of the PSA, to assume ownership of the Plaintiff's loan, thereby denying the Plaintiff access to NMS relief. *Id.* at 9-10. In essence, the Plaintiff seeks a determination

that she has standing to maintain Count II on the basis of Bank of America's alleged bad faith in its performance under the PSA.

However, absent enforceable contract rights to support this claim, the Court need not inquire into the nature of Bank of America's performance of its obligations under the PSA. For the reasons discussed in Section III.A.3, the Plaintiff is, at most, an incidental beneficiary to the PSA, and incidental beneficiaries have no standing to enforce a pooling and servicing agreement. *See Rajamin*, 757 F.3d at 86-87. Even if Bank of America's alleged nonperformance under the PSA may have adversely impacted the Plaintiff's ability to qualify for relief under the NMS, the Plaintiff nevertheless lacks standing to enforce the PSA to vindicate her entitlement to what is at most an unrelated, incidental, potential benefit to the agreement. Despite the Plaintiff's conclusory allegations that Bank of America misused its position to deny her this incidental benefit, she does not acquire any enforceable rights under the PSA. *See Blick v. JP Morgan Chase Bank*, No. 3:12-CV-00001, 2012 WL 1030115, at *5 n.4 (W.D. Va. Mar. 27, 2012), *aff'd*, 475 F. App'x 852 (4th Cir. 2012) (recognizing that the borrowers' fraud-based argument that their note was securitized after the trust's closing date was reserved for the "allegedly defrauded certificate-holders"); *see also Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 284 (Alaska 2012) ("The distinction between intended and incidental third-party beneficiaries divides those parties who have a cause of action for bad faith and those who do not."); *Niazi v. JP Morgan Chase Bank*, 886 N.Y.S.2d 404, 405 (App. Div. 2009) (holding that a plaintiff who was merely an incidental beneficiary to a building loan agreement could not state a claim for fraud in connection with the agreement). If Bank of America engaged in any bad faith conduct in the performance of its obligations under the PSA, only a party or intended beneficiary with enforceable contractual rights may complain of it.

Thus, the Plaintiff's attempt to distinguish *Rajamin* by directing her attack as one against Bank of America is not persuasive or dispositive.  The Court has already determined that the Plaintiff is neither a party to nor an intended beneficiary of the PSA.  Therefore, regardless of any incidental benefit that may be at stake, the Plaintiff lacks standing to enforce noncompliance with the PSA based upon Bank of America's "insider" status.  Accordingly, the Court concludes that the Plaintiff cannot maintain Count II on this basis.

## IV. Conclusion

Count I of the Amended Complaint was previously resolved by consent with the entry of the Amended Loan Modification Order in the main bankruptcy case, leaving only Count II unresolved.  Count II is entirely founded upon the Plaintiff's ability to enforce the terms of the PSA to seek a judicial determination that Bank of America, rather than Bank of New York Mellon, is the holder of the Note secured by the Deed of Trust on the Property.  Having considered the arguments of the parties and for the reasons stated herein, the Court concludes the Plaintiff lacks prudential standing to enforce the PSA as the basis for Count II.  Accordingly, because the Amended Complaint does not allege any other cognizable legal theory for Count II, the Court finds that Count II of the Amended Complaint must be dismissed.

A separate Order will be entered by the Court consistent with the findings and conclusions contained in this Memorandum Opinion.

The Plaintiff is advised that an appeal lies from this matter to the United States District Court for the Eastern District of Virginia.  Except as provided in Federal Rules of Bankruptcy Procedure 8002(b)-(d), any notice of appeal must be filed with the Clerk of this Court within fourteen (14) days of the date of entry of the Order to be entered by the Court.  The filing fee for a notice of appeal is $298.00.

The Clerk shall deliver copies of this Memorandum Opinion to Sheryl S. Stanworth, Plaintiff; D. Carol Sasser and Johnie R. Muncy, counsel for the Defendants; Michael P. Cotter, Chapter 13 Trustee; and to the unrepresented parties themselves.

Entered this 7th day of January, 2016, at Norfolk in the Eastern District of Virginia.

FRANK J. SANTORO
United States Bankruptcy Judge

Entered on Docket: Jan 7 2016